[Civ. No. 39901. Second Dist., Div. Three. June 23, 1972.]

DENNA LOU THOMPSON, a Minor, etc., et al., Petitioners, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY,
Real Party in Interest.

## Counsel

Stanley G. Swarzman and John Joseph Hall for Petitioners.

No appearance for Respondent.

John J. Balluff, Neal W. McCrory and Richard L. Rosett for Real Party in Interest.

## Opinion

**SCHWEITZER, J.**—We issued an alternative writ of mandate to review the trial court's order of February 8, 1972 in Thompson, et al. vs. The

Atchison, Topeka and Santa Fe Railway Company, et al., Los Angeles Superior Court case No. 942305, granting the motion for change of venue filed by The Atchison, Topeka and Santa Fe Railway Company, real party in interest. Santa Fe has filed a demurrer and answer to the petition for writ of mandate. The demurrer is based on the ground that the petition fails to set forth facts sufficient to indicate that the trial court abused its discretion in granting the motion.

On October 31, 1968 petitioners (plaintiffs) filed in Los Angeles Superior Court a complaint against Santa Fe for damages for the wrongful death of their parents in an auto-train collision that occurred in Madera County on May 26, 1968. The case has been at issue since February 14, 1969.

On October 30, 1969 Santa Fe moved to change venue to Madera County on the ground that "the convenience of witnesses and the ends of justice would be promoted by the change." (Code Civ. Proc., § 397, subd. 3.) The motion was denied January 15, 1970. A trial setting conference was calendared for January 26, 1972. Shortly prior thereto, on January 11, 1972, Santa Fe filed a second motion for change of venue on the same ground; the motion was heard before a different judge and granted on February 8, 1972. The trial setting conference apparently was placed off-calendar.

Here, plaintiffs contend that the trial court abused its discretion in granting the renewed motion because Santa Fe made an insufficient showing of change of circumstances and because it was dilatory in presenting the renewed motion.

### Facts

*The First Motion.* By declarations Santa Fe represented that it intended to call as witnesses the following persons who reside in Madera County: four investigating law enforcement officers, one photographer, one pathologist, and two physicians, none of whom was a percipient witness; at least one of four named relatives of the decedents, each of whom was a percipient witness; and in addition the four members of the train crew, each a resident of Fresno County. It also represented that it may be necessary to use at trial records of the State Compensation Insurance Fund concerning decedents' health, and that these records are kept in Fresno. Santa Fe also stated that trial in Madera County would permit the jury to examine the scene of the accident.

In response plaintiffs questioned the need to call as witnesses each of the four investigating officers, offered to stipulate to the introduction into evi-

dence without foundation of the report of the pathologist, the photographs of the scene taken by a photographer, the reports of two of the investigating officers, and the workmen's compensation file, stated that each of the four relatives of the decedents named in Santa Fe's moving papers plans to attend and would not be inconvenienced by trial in Los Angeles, and pointed out that the records of the State Compensation Insurance Fund can be made available for trial through its Los Angeles office and that these records contain testimony of only two doctors, one a Los Angeles doctor, the other a San Francisco doctor. The response also names 10 witnesses, each a Los Angeles resident, whom plaintiffs intend to call and states that each of them and each plaintiff would be inconvenienced by having the trial in Madera County. It also sets forth the declaration of plaintiff Ralph Thompson, Jr., stating that he is a paraplegic, that he had been and now is a resident of Los Angeles County, and that he has been and now is under medical care at Rancho Los Amigos Hospital in Los Angeles County.

Santa Fe's motion for change of venue on the ground of convenience of witnesses was denied by Judge Cole on January 15, 1970.

*The Second Motion.* Counsel for Santa Fe states in his answer to the petition for writ of mandate that "[i]t was not until January, 1972, that I again looked at this file," presumably after having received notice of the trial setting conference scheduled for January 26, 1972, and that he then learned that Ralph Thompson, Jr., the paraplegic plaintiff, was living in Madera County as of April 27, 1971, the date his deposition was taken by another attorney for Santa Fe; that he considered this fact a sufficient change of circumstances to make a renewed motion for change of venue on the ground of convenience of witnesses.

The second motion for change of venue was filed January 12, 1972 on the same ground as the first motion—that the convenience of witnesses and the ends of justice will be promoted by the change of venue. An attached declaration listed the same witnesses who would be convenienced by trial in Madera County as listed in the declaration filed in support of the first motion. It added the names of a Madera County and a Fresno County doctor who had treated Ralph Thompson, Jr., the paraplegic plaintiff, since the fatal accident, stated "apparently all of the plaintiffs . . . [and] a large number of plaintiffs' relatives reside in Madera County," alleged that trial in Madera County would be more convenient to all witnesses, both plaintiffs' and Sante Fe's, and stated that since plaintiffs contend that the train was proceeding at an excessive speed, that the operator gave an inadequate warning, that Santa Fe had failed to install and maintain adequate warning signals, and that the railroad had per-

mitted weeds and other plants to grow at the intersection, thus obscuring the approach of a train, a jury inspection of the site would be desirable.

Santa Fe's attorney filed a separate declaration stating that in the four-year period preceding January 1, 1972, 485 personal injury cases had been filed against Santa Fe in the state, 264 of which were filed in Los Angeles County, 96 of which involved accidents that occurred outside of Los Angeles County; that the interests of justice suggest that Los Angeles County be relieved of this burden, and also that "an undue burden is placed upon [Madera] County . . . because the plaintiffs seeking damages reside in [Madera] County and may be a burden on that county by the verdict of residents of another County."

The declaration of an official of Madera County Superior Court, dated January 19, 1972, stated that a five-day jury case could be set for trial on or about August 1, 1972.

In reply, plaintiffs' attorney stated that at the time of the accident the plaintiffs were 16, 20 and 21 years of age; that Ralph Thompson, Jr., age 21, had been a paraplegic and under constant nursing and medical care since age 7; that the deceased parents had lived in Los Angeles until approximately one year prior to the accident when the family moved to Madera due to industrial injuries suffered by plaintiffs' deceased father; that one of the principal issues in the case is the life expectancy and earning capacity of the father and the life expectancy of Ralph Thompson, Jr.; that the bulk of the employment records of the father and medical records of Ralph Thompson, Jr., are in Los Angeles County; that Ralph Thompson, Jr., was confined at Rancho Los Amigos Hospital in Los Angeles County for approximately nine months after the fatal accident; that thereafter, while on a temporary visit to Madera, he was again hospitalized, during which time Santa Fe took his deposition; that the Los Angeles Superior Court is setting cases for trial 60 to 90 days after a trial setting conference; that petitioners renew their former offer to stipulate that the reports of the investigating officers and the coroner, and the photographs taken by the photographer could be received in evidence without foundation; that petitioners question Santa Fe's need to have its four crewmen as witnesses since two were in the caboose of the 57-car train; that petitioners question the need for Santa Fe to call as witnesses four physicians since the only treatment rendered by one doctor was to the 16-year-old plaintiff for an upset stomach and for "nerves on only two or three occasions"; that four of Santa Fe's listed witnesses are relatives of plaintiffs, and not only would they not be inconvenienced by trial in Los Angeles, but that each plans to attend trial in Los Angeles; that if the offered stipulations be accepted and the unnecessary witnesses be eliminated, only

two or three of Santa Fe's list of witnesses would be inconvenienced by trial in Los Angeles; that on the other hand plaintiffs intend to call as witnesses 12 Los Angeles residents; and that each of the plaintiffs is only temporarily residing in Madera County and intends to return for permanent residence in Los Angeles County before trial. Declarations of plaintiffs and of their listed witnesses in support of these statements were filed.

## Change of Venue—Convenience of Witnesses

"[T]he granting or denying of . . . a motion [for change of venue] is discretionary with the trial court and is subject to reversal on a clear showing of an abuse of this discretion." (*Harden* v. *Skinner & Hammond,* 130 Cal.App.2d 750, 754 [279 P.2d 978].) " 'In a legal sense discretion is abused whenever in the exercise of its discretion the court exceeds the bounds of reason, all of the circumstances before it being considered.' " (*State Farm etc. Ins. Co.* v. *Superior Court,* 47 Cal.2d 428, 432 [304 P.2d 13].)

Here, as previously stated, plaintiffs contend that the trial court abused its discretion in granting the renewed motion because Santa Fe made an insufficient showing of change of circumstances and because it was dilatory in presenting the renewed motion. Inherent in these contentions is the assertion of prejudice to plaintiffs.

It should be noted that the relevant facts in this case are so evenly balanced that no party could successfully urge abuse of discretion by the court in its initial determination of venue; the question of abuse of discretion is raised solely as the result of the court's ruling on the renewed motion in the light of its ruling on the prior motion. We also point out that this case involves a renewed motion on the *same* ground as the motion previously considered; it is thus distinguishable from the case of a renewed motion on a different ground. (See *Seybert* v. *County of Imperial,* 139 Cal.App.2d 221 [293 P.2d 135].) The only reported decision involving a renewed motion on the *same* ground is *McNeill & Co.* v. *Doe,* 163 Cal. 338 [125 P. 345]; it is distinguishable in that the trial court was consistent—each motion was denied and the appellate court upheld the denial of the second motion, pointing out that it was the trial court's function to resolve the conflict in the evidence. There is no reported decision involving the question presented herein, a renewed motion on the same ground in which the trial court made a different ruling on the second motion.

As indicated, "[t]he court may, on motion, change the place of trial . . . [w]hen the convenience of witnesses and the ends of justice would be promoted by the change." (Code Civ. Proc., § 397, subd. 3.) The code

section contains two conditions, worded in the conjunctive; the expressed reasons of the court below fully recognized this fact. ■ There is no special statutory procedure governing the motion, and the code imposes no express time limit within which it must be made. However, it has been stated that such motion must be made within a reasonable time after the answer is filed. (2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 552, p. 1368; Cal. Civil Procedure Before Trial (Cont. Ed. Bar 1957) § 47, p. 198.)

"An order denying a motion is not a judgment subject to the doctrine of res judicata, and a court has jurisdiction to consider a renewal thereof. However, as a matter of policy and practice, renewal of the same motion is discouraged, and the renewed motion will almost invariably be denied where the grounds are the same." (2 Witkin, *id.*, § 527, p. 1348.) It has been suggested that renewal of the motion is proper "[w]here circumstances have changed. This is the important right, recognized by many dicta but not adequately exploited." (2 Witkin, *id.*, § 528, p. 1349.) ■ Consistent with the foregoing and in the absence of express authority thereon, we add that a renewed motion based upon change of circumstances must be made within a reasonable time after knowledge thereof is or should have been acquired. (See *Willingham* v. *Pecora*, 44 Cal.App.2d 289, 295 [112 P.2d 328], holding a delay of four months in making an initial motion for change of venue to be unreasonable.) There is no authority indicating whether the granting of a renewed motion when there has been no significant change in circumstances constitutes per se an abuse of discretion; the foregoing quotations suggest such conclusion.

We examine the reasons given by the court in its minute order granting the renewed motion to ascertain whether they support the court's conclusion of a change in circumstances.

Paragraphs 1 and 7 relate to stipulations and will be considered together. Paragraph 1 states in part: "[d]efendants have stipulated . . . to the admission without objection" of the medical, employment and tax records of the deceased father, and the medical records of the paraplegic plaintiff. Paragraph 7 notes that "the medical witnesses on both sides are about evenly balanced in terms of the convenience of those witnesses to attend the trial. To offset any doubt about the prejudice, if any, this might cause the plaintiff [*sic*], the Court obtained stipulations from the defendant that favor the plaintiff [*sic*]. . . ."

We seriously question the conclusion that such stipulations "favor" the plaintiffs; if anything they place plaintiffs at a disadvantage as will hereafter be noted. Santa Fe argues that the stipulations remove many of

the objections interposed by plaintiffs, pointing out that "[i]f the opposing party offers to stipulate to the facts to be adduced, this eliminates that issue from the case and the necessity of producing witnesses to prove the fact involved." (*Harden* v. *Skinner & Hammond, supra,* 130 Cal.App.2d 750, 754.) However, as stated in *Nelson* v. *Enos,* 47 Cal.App.2d 79, 81 [117 P.2d 429]: "As was said in *Ingal* v. *Stoddard,* 35 App.Div. 539 [54 N.Y.Supp. 813, at page 814], 'To defeat such a motion, the stipulation . . . must be to the effect that the facts sought to be established by the witnesses will be admitted upon the trial. An admission that a witness will testify to a fact is of little or no value, because the party could not safely go to trial without calling the witness, inasmuch as the correctness of his statement would be determined by the court and jury in no small degree from his appearance upon the stand and the manner in which he gave his testimony.' "

Here plaintiffs state that the stipulation is unsatisfactory, pointing out that the custodians of the records in Los Angeles County cannot be required to respond to subpoenas issued by the Madera Superior Court, and add that even if the records were produced, medical testimony would be necessary to interpret the medical records as to the life expectancy of the deceased parents and of the paraplegic plaintiff. We agree under the circumstances of this case; at the time of the accident the father was receiving workmen's compensation benefits as the result of an industrial injury and there is an indication that he soon would have been able to return to his employment; Ralph Thompson, Jr., had been under extensive medical care in Los Angeles County for his paraplegic condition for approximately 15 years.

Paragraph 2 states that since the accident occurred in Madera County, "if either party requests a view," it would be more convenient to have the trial in Madera County. This conclusion is obvious, but it was not a change in circumstances; it was considered at the hearing of the first motion.

Paragraph 3 states in part: "All percipient witnesses reside in Madera." Santa Fe concedes that the court erred in this statement, that two of the six percipient witnesses live in Los Angeles, and that the remaining four are residents of Madera. The court noted that the Madera County residents would not be subject to subpoena issued by the Los Angeles Superior Court, but it apparently overlooked the admitted fact that the six percipient witnesses are relatives of plaintiffs and stated in their declarations that they plan to attend the trial in Los Angeles and would not be inconvenienced thereby. Again we note that the residence of the percipient witnesses

was not a change in circumstances; it was considered at the hearing on the first motion.

Paragraph 4 of the minute order states that Ralph Thompson, Jr., the paraplegic plaintiff, "is now in Madera," that at the time of the first motion he was confined in a hospital in Los Angeles, and noted this as a change in circumstances after the first motion. Santa Fe states that the paraplegic's residence in Los Angeles was the reason its first motion was denied; the record does not support this statement; the minute order sets forth no reason for denial of the first motion. Even assuming this was the crucial reason for denying the first motion, it appears that at the hearing on the renewed motion the court placed undue emphasis on the paraplegic plaintiff's temporary residence in Madera and failed to consider the uncontradicted statement in his declaration that he intended to return to Los Angeles County for permanent residency by April or May 1972, that "Rancho Los Amigos has one of the finest rehabilitation departments for paraplegics in the country," and that it is extremely difficult for him to travel due to loss of substantial control of bladder and bowels. Under these facts it appears that there is no merit to the fourth reason given by the trial court.

Furthermore, although it has been suggested that the convenience of *parties* is not to be considered as a factor, under the "convenience of witnesses" statute (*Willingham* v. *Pecora, supra,* 44 Cal.App.2d 289, 293), we have found no reported decision which has held that the moving party may rely on the adverse party's "convenience" as a basis of a motion, and there is no indication here that the moving party intends to call any adverse party as a witness.

Paragraph 5 sets forth as a reason for granting the motion the inconvenience to the four nonpercipient investigating officers by requiring their attendance at trial in Los Angeles and states that their travel time "could better be used to serve the people of this State in the locality of their assignment." The latter reason appears to be entirely irrelevant to the question presented. As to the first of the reasons, we note that the accident occurred in February 1969; it is entirely likely that the officers, due to the intervening time and numerous intervening events, have forgotten many of the details of the accident and that as a result their testimony would consist of merely a restatement of the contents of their respective reports. It is also likely that the reports contain cumulative or overlapping details. Plaintiffs offered to stipulate that the report of each officer could be received in evidence without further foundation; the offer was not accepted. We expressly refrain from commenting on the need of the testimony of each of the four officers; we do note, however, that the convenience to

these witnesses was considered by the court at the hearing on the first motion; the facts with respect thereto did not constitute a change in circumstances.

Paragraph 6 states that "[i]t does not serve the interest of justice to impose the burden of this case on Los Angeles County" and compared the backlog of cases and trial calendar of the superior courts in the two counties. *Peiser* v. *Mettler*, 50 Cal.2d 594 [328 P.2d 953, 74 A.L.R.2d 1], states at page 612: "There is no merit to defendants' argument that defendant Mettler's books and records were located in Kern County [citation] and that the court calendar in Kern County is less congested than that in Los Angeles County inasmuch as neither of these reasons falls within the statutory provision regarding change of venue for convenience of witnesses." In *Peiser* the trial court's order granting change of venue was reversed. Santa Fe correctly points out that *Peiser* considered solely the question of convenience of witnesses, that section 397, subdivision 3, Code of Civil Procedure, is worded in the conjunctive, and argues that here the trial court's sixth reason relates solely to the second of the conjunctive conditions, that "the ends of justice would be promoted by the change," and concludes that *Peiser* is therefore not in point.

We cannot determine from the opinion whether the Supreme Court considered only the first of the conjunctive conditions of the statute, or whether it was referring loosely to the entire statute, as might commonly be done. In any event the facts set forth in the declarations of the parties in the instant case do not support the stated reason of the trial court. The court refers to a delay until trial of 30 months in Los Angeles County; this statement is not supported by the record; it possibly refers to time between the filing of an at-issue memorandum and trial date. The uncontradicted declarations filed by plaintiffs state that the case could be set for trial in the Los Angeles Superior Court 60 to 90 days after the trial setting conference, which had been scheduled for January 26, 1972. The declaration filed by Santa Fe states that the case could be set for trial in Madera Superior Court on or about August 1, 1972. Thus it appears that an earlier trial date could have been assigned in Los Angeles County. Furthermore, we point out that the comparative trial delay in the two counties was before the court at the hearing of the first motion; it was not a change in circumstances.

■ From our analysis of the record we conclude (1) that there was no showing of a significant change in circumstances as to "the convenience of witnesses and the ends of justice" presented to the court in connection with the renewed motion for change of venue from the circumstances

considered by the court in connection with the hearing of the first motion for change of venue; and (2) that Santa Fe had knowledge of the alleged change in circumstances at least seven months prior to filing its renewed motion for change of venue, and failed to act thereon within a reasonable time, thereby causing prejudice to plaintiffs by causing delay in a prospective trial date of 60 to 90 days after the scheduled January 26, 1972 trial setting conference. Under these circumstances the granting of the renewed motion constituted an abuse of discretion.

Santa Fe's demurrer to the petition for writ of mandate is overruled. It is ordered that a peremptory writ of mandate issue requiring the trial court to set aside its order granting a change of venue, with directions to make a new order denying the change of venue requested by The Atchison, Topeka and Santa Fe Railway Company.

Ford, P. J., and Cobey, J., concurred.

A petition for a rehearing was denied July 11, 1972, and the opinion was modified to read as printed above. The petition of the real party in interest for a hearing by the Supreme Court was denied August 16, 1972.